### RICE *v.* TERRILL.

1. GIFTS—EVIDENCE—SUFFICIENCY.

In a suit for a partnership accounting and to recover bonds which defendant husband and wife purchased with plaintiff's money, defendants' claim that the bonds were an absolute gift to defendant wife, *held*, not sustained by the evidence.[1]

2. PARTNERSHIP — SETTLEMENT GROSSLY UNFAIR WILL BE SET ASIDE IN EQUITY.

A partnership settlement giving to defendant partner and his wife $7,000 worth of bonds purchased with plaintiff's money, which were no part of the partnership property, besides other property, while plaintiff, who furnished all the money for the partnership, which never did any business, was given only a one-half interest in a motor car, a rowboat, and a tarpaulin, is so lacking in

[1]Gifts, 28 C. J. § 82.

consideration, so grossly unfair and unconscionable, that in a court of equity it cannot be permitted to stand.[2]

Appeal from Mecosta; Barton (Joseph), J. Submitted January 20, 1925. (Docket No. 12.) Decided May 14, 1925.

Bill by Justin R. Rice against Frank D. Terrill and another for an accounting. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Fred R. Everett* and *Rosslyn L. Sowers,* for plaintiff.

*Peters & Marshall (A. A. Worcester,* of counsel), for defendants.

McDONALD, C. J. This bill is filed to obtain an accounting from Frank D. Terrill, who was formerly in partnership with the plaintiff, and to recover from both of the defendants $7,000 in bonds which the plaintiff claims were purchased with his money and belong to him. In their answer the defendants deny that they or either of them are indebted to the plaintiff in any sum whatever. As to the bonds they contend that they were a gift from the plaintiff to defendant Bertha B. Terrill in fulfillment of a promise previously made to purchase her a home; and that in any event, before the commencement of this suit, all of their differences were compromised and settled, as is evidenced by a writing in which all of the parties joined and in which the plaintiff released any claims which he may have had against them and particularly his pretended claim to the bonds in question. At the conclusion of the proofs the circuit judge dismissed the bill. From the decree entered, the plaintiff has appealed.

In view of the evidence it will not be necessary to

[2]Partnership, 30 Cyc. p. 706.

undertake a determination of a partnership accounting between these parties.   That matter will only be discussed so far as may be necessary in determining the question, whether the plaintiff is entitled to the bonds or their proceeds.   As we view the record that is the only issue involved.   In determining this question it will be helpful to refer briefly to some of the undisputed facts.   In February, 1910, the plaintiff and defendant Frank D. Terrill formed a partnership to engage in the poultry business.   While for nearly ten years they were thus associated, they do not seem to have actually engaged in the business, though they succeeded in spending thousands of dollars, all of which was furnished by the plaintiff. Mr. Terrill had no money.   At first the plaintiff was receiving a regular weekly allowance from his father; later by inheritance he came into possession of considerable property, a large part of which went into the bank in the firm name of Terrill & Rice.   The plaintiff had no home and it was understood that he was to live with the defendants.   Their chief trouble seems to have been in securing a location for their poultry business.   They at first bought a farm in Michigan, but deciding that it was not suitable, they purchased an automobile and camping outfit and traveled about through various States, spending winters in Florida and in Chicago.   During all of this time the three of them were being supported with the money furnished by the plaintiff.   While in Florida in the winter of 1918, a disagreement arose and they separated.   The defendants went to Detroit where they both worked for nearly a year, in which time they accumulated $1,200.   Then the plaintiff offered to resume their partnership relations.   They agreed to the proposal, the defendant Bertha Terrill claiming that they did so after plaintiff had promised her that he would guarantee to provide her with a home "in her old age."   At this time the defendants

knew that the plaintiff was soon to receive several thousand dollars from his mother's estate. They knew that he would turn it into the firm to be handled by Mr. Terrill. Of this the circuit judge says, and we quote his remarks with approval:

"When he came back and offered to renew their relation, I am going to assume that they knew when they quit an honest-to-goodness job where they were earning their dollars, they did it with the understanding they were going to get some easy money out of this plaintiff. They must have known it from the years of experience that he did not know any better than to spend his money in a reckless manner."

Five thousand dollars from the mother's estate came. As usual the plaintiff turned it over to his partner, who deposited it in the bank in the joint names of himself and wife. Other money subsequently came from the same source and was handled in the same way. With this money Mr. Terrill purchased the bonds which are the subject of this suit, and these he caused to be issued in the names of himself and wife, and deposited them in a safety box in Chicago. In August, 1921, after Mrs. Terrill had secured some sort of writing from the plaintiff, which she claims confirmed the title of the bonds in her, the partnership was dissolved, the defendants taking all of the partnership property to Chicago.

The equities of this case are strongly with the plaintiff. It is undisputed that he put many thousands of dollars in the so-called partnership, that he supported the defendants for nine years, paid their traveling expenses, their living expenses at winter and summer resorts, and when their relations were terminated they had $7,000 of bonds which they had purchased with his money, and he had a half interest in a second-hand automobile and a cream separator.

The defendants base their claim to these bonds first upon a so-called bill of sale given to Mrs. Terrill at

Gun lake in 1921, and second, upon a settlement agreement made in Chicago on the 31st of August, 1921.

In their brief, counsel for the defendants say:

"It is contended in behalf of the defendants that all this money that went into the bonds was turned over in pursuance of the promise and agreement of the plaintiff, that in consideration of defendants giving up their positions in Detroit, he would guarantee the defendant Bertha B. Terrill a home in her old age."

The plaintiff denies that he made any such promise to Bertha B. Terrill, but whether he did or not, there is no evidence that he gave her these bonds in fulfillment of that agreement. The so-called bill of sale was not offered in evidence or exhibited at the hearing. The plaintiff admits having signed some paper, but denies that it was a bill of sale. It matters not by what name it should be designated. There is but slight conflict in the evidence as to its purpose and effect. The plaintiff testified that Mrs. Terrill said to him:

" 'Raymond, you and Frank are traveling around a great deal in the car and you are apt to get killed. I haven't anything except what you are furnishing, such as the bonds, and if either of you should get killed, or both get killed, I would be left penniless. Don't you think there ought to be something regarding— agreement of some kind regarding those bonds?' I said, 'I am willing to make an agreement to that effect, that if I am killed the bonds can be turned over to you.' * * * I did not intend to convey those bonds away from myself, as long as I was alive."

Mrs. Terrill testified as to the purpose of the bill of sale as follows:

"We had been on so many trips and my daughter objected; she thought it wasn't right for me to go and take chances without having any protection. * * * My object in getting this paper drawn up was this, so that in case of the death of either Mr. Terrill or Mr. Rice or both of them, that I would be protected. There was such a paper drawn and signed."

Mrs. Fluett, a daughter of the defendants, who was present when the bill of sale was executed, testified to her understanding of it as follows:

"As a matter of fact, those bonds were in the name of my father, or my father and mother.     I understood that.     This paper was drawn up so that in the event of the death of my father or Mr. Rice, my mother would have something to show that they were hers.     *     *     *

"Q. You were the one that suggested that something ought to be drawn up so that your mother would have a legal right to get the bonds in case your father or Mr. Rice was killed?

"A. Yes, due to the fact that my father carried no insurance."

In view of this testimony we think the circuit judge was wrong in holding that, in the transaction at Gun lake, the plaintiff gave Mrs. Terrill the absolute title to the bonds.     There is no reason why he should have done so.     There was no consideration for it.     He had supported them for nine years and got nothing in return except their society.     The circuit judge correctly characterized the attitude of the defendants in saying that they early discovered that plaintiff was an "easy mark," and that they continued their relations with him for the purpose of getting some "easy money."     That was evidently their purpose in the settlement which they made with him in Chicago on the 31st of August, 1921.     That agreement was reduced to writing and is so lacking in consideration, so grossly unfair and unconscionable that in a court of equity it cannot be permitted to stand.     It gave the plaintiff a one-half interest in a Hudson motor car, a rowboat and a canvas tarpaulin.     It gave the defendants $2,500 Nelson Morris & Company bonds, $2,500 Cudahy Packing Company bonds, $2,000 Midway Masonic Temple Association bonds, one Eastman kodak, one cream separator, one pair of field glasses and one complete camping outfit.     These bonds were

purchased with the plaintiff's money. They were no part of the partnership property. The defendants got them without the payment of any consideration whatever. But conceding defendants' claim that there was some consideration, it was so grossly inadequate as to shock the conscience and create a presumption of fraud. We think that in sustaining this settlement and in dismissing the plaintiff's bill, the circuit judge erred. The plaintiff is entitled to the bonds or their proceeds.

A decree will be entered in this court granting him such relief, with costs.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.